**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

DANNY GOODWIN                                                    PLAINTIFF

V.                                    4:05CV892JMM

JOHN E. POTTER,
POSTMASTER GENERAL                                              DEFENDANT

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is the Defendant's Motion for Summary Judgment.  Plaintiff has responded and the Defendant has replied.  For the reasons set forth below, the Motion is GRANTED.

<u>Facts</u>

Plaintiff Danny Goodwin is a 54 year old white male.  He has been employed by the United States Postal Service since 1974.  He began his career as a letter carrier at the North Little Rock, Arkansas, Post Office, Park Hill Station.  He transferred to the Sherwood Station in March 2001.  However, he did not like his route at the Sherwood Station so he transferred back to the Park Hill Station in less than one month.  In February 2002, Plaintiff transferred again to the Sherwood Station.  Plaintiff is currently employed by the Postal Service in Denver, Colorado.

The facts relevant to this case occurred during Plaintiff's employment at the Park Hill Station in North Little Rock.  Karen Osowski, a white female, was a supervisor at Park Hill from January 2000 to October 2003.  She was Plaintiff's first-level supervisor until he transferred to the Sherwood Station in February 2002.  In July 2000, Percy Gilbert, an African American male, was assigned as the Acting Station Manager of the Park Hill Station.  Gilbert remained in that position until March 2002 when he was reassigned to another office.  While Gilbert was Manager at Park Hill, he supervised all of the employees at the Park Hill Station including Plaintiff and Osowski.  Plaintiff was the Union Steward for the Station.

In May 2001, the Arkansas District Office conducted route inspections of the Park Hill mail delivery routes.  Gilbert did not request the route inspections.  The Operations Support Office ("OSO") in the District Office initiated and conducted the route inspections.  During the inspection, three routes were abolished.  The other routes, including Plaintiff's, were adjusted.  It is undisputed that Gilbert was not satisfied with the adjusted routes, but had to comply with directions from higher authority.  Some of the adjusted routes proved to be too long, including Plaintiff's, and additional adjustments had to be made.  The underlying purpose of the route adjustment was to save the Postal Service money by improving route efficiency.

Gilbert monitored Plaintiff while Plaintiff would sort, or "case," the mail before starting his route in the mornings.  According to Defendant, Gilbert had concerns about Plaintiff's performance.  Gilbert claimed that Plaintiff would "disappear," and would not be at his case sorting mail.  (Ex. 3, 6).  Gilbert had performance issues with other carriers, including two African American carriers, Ray Jackson and Anthony Williams. (Ex. 2, 3, and 6).

On June 1, 2001, Plaintiff filed a formal EEO Complaint of Discrimination with the Postal Service.  The Complaint alleges that Plaintiff was discriminated against because of his race and age on March 13, 2001 when he was yelled at by his manager Percy Gilbert.  According to the Complaint, Plaintiff explained to Gilbert why he was taking longer to deliver his mail.  Gilbert became angry, changed Plaintiff's starting time and threatened to make Plaintiff clock out.

Plaintiff's second formal EEO Complaint was filed on August 13, 2001.  In the Complaint Plaintiff alleges that he was discriminated against by Gilbert on the basis of his race and age.  Plaintiff was told by Gilbert to report to work one hour later at 8:00 a.m. and not to

2

come in early on Mondays with the rest of the employees.  This Complaint was later amended to include a charge of retaliation.

On August 30, 2001 a U.S. Postal Service Threat Assessment Team ("TAT") conducted an investigation into concerns that had been expressed by undisclosed employees at the Park Hill Station regarding a hostile work environment and job-related stress.  Thirty-two employees were interviewed.  Two individuals, who were not named in the report, were identified as disruptive to the workplace.  The conclusion of the TAT Team was as follows:

> The team recommends that the two individuals disrupting the workplace need some degree of counseling.  Also, the Station Manager [Percy Gilbert] may benefit from a course in Human Relation's [sic] skills.  The Team does not believe that the Station Manager realizes that by acting as he does, he may single out certain employees for harsh treatment.
>
> The Team did not find an overall hostile workplace in this office although the Station Manager's ineffective relationship skills and the willingness of the NALC Union Steward [Danny Goodwin] to be combative have exacerbated conditions that existed prior to the Station Manager's arrival.  The Team suggests that the management schedule focus group meetings for the Park Hill Station.

(Ex. 7).

On December 5, 2001, an incident occurred between Plaintiff and Gilbert regarding a poster describing employees' union representation rights, referred to as "Weingarten Rights." Plaintiff was asked to go to Gilbert's office.  Gilbert pulled from his desk drawer a laminated "Weingarten Rights" poster which Gilbert had removed from the union bulletin board in the break room.  Gilbert asked Plaintiff if Plaintiff had put the poster on the bulletin board, and Plaintiff replied in the negative.  At that time, Gilbert told Plaintiff that if Plaintiff put anything on the bulletin board, he better have Gilbert's prior approval, or Gilbert would charge Plaintiff with failure to follow instructions.  Gilbert cut up the poster he had removed from his desk

drawer and told Plaintiff he could go back to work.  Plaintiff asked Gilbert for the pieces of the cut up poster.  Gilbert became angry, pointed his finger at Plaintiff, and said he was not going to give the cut up pieces to Plaintiff.  Gilbert told Plaintiff to clock out and go home.  Plaintiff went to the time clock to clock off, and was followed by Gilbert.  Gilbert asked Osowski and Plaintiff to step into an office.  Gilbert told Osowski that he was sending Plaintiff home on administrative leave until told to return to work.  Plaintiff received a letter dated December 6, 2001 stating that he should report to work on his next scheduled work day after receipt of the letter.

On December 19, 2001, Plaintiff filed an unfair labor charge with the National Labor Relations Board charging that Gilbert's action on December 5, 2001 were taken in retaliation for Plaintiff's union activity and for the previous charge Plaintiff had filed.  Plaintiff also filed an EEO Complaint with the Postal Service on January 21, 2002 regarding the Weingarten rights incident.  Plaintiff and the Defendant entered into a settlement agreement which resolved these charges.  The settlement agreement is dated February 26, 2002 and provides Plaintiff with $451 back pay for eight hours on December 6th and 7th and 4 hours of overtime pay.

 Plaintiff's first two complaints were consolidated under Case Number 4G-720-0142-01. The complaint regarding the December 5, 2001 incident was withdrawn because of the settlement agreement.  A hearing before the Equal Employment Opportunity Commission Administrative Judge David R. Treeter was held on September 13-14, 2004.  Judge Treeter issued a pre-hearing Order on June 28, 2004, stating that the issues which would be addressed at the hearing were as follows:

> 1) Whether the U.S. Postal Service discriminated against Danny Goodwin on the bases of his race and age when the agency subjected Goodwin to harassment and informed him that beginning 8/13/01 he would have to report to work at 8:00 a.m., and that he was not to come into work early on Mondays;

4

2) Whether the U.S. Postal Service discriminated against Danny Goodwin on the bases of his race, color, sex, age, and in reprisal for prior EEO activity, when, during the period March 2001 and continuing, the agency subjected Goodwin to a hostile work environment.

Plaintiff withdrew issue one at the hearing on September 13, 2004.  Following a two-day hearing, Judge Treeter found no discrimination or retaliation against Plaintiff.  The U.S. Postal Service issued its final decision on March 30, 2005, accepting Judge Treeter's decision as the Agency's final decision.

Plaintiff filed the instant action on June 17, 2005.  Plaintiff's Complaint states: "The Honorable David Treeter found in favor of the USPS and this civil action is a result of Goodwin wishing to further try his issues.  The Partial Findings of Facts at that hearing are set out below which the plaintiff does not dispute as the Statement of Facts in this case with further amplification by the plaintiff."  (Complaint, at p.1).  Plaintiff seeks actual, compensatory and punitive damages from the Defendant for retaliation under Title VII.  Plaintiff has conceded all other claims in the case. (Pl.'s Response in Opposition to Summ. Judg.).

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

5

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

<u>Discussion of the Law</u>

In a retaliation claim, the Plaintiff bears the burden of establishing a prima facie case. To establish such a claim, Plaintiff must show: 1) he engaged in protected conduct; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) the materially adverse action was causally linked to the protected conduct. *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *cf. Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886, 892 (8th Cir.2005) (articulating old standard where, to satisfy the

second prong, the plaintiff was required to show he suffered an adverse employment action).

"The defense may rebut a plaintiff's claim by advancing a legitimate, 'non-retaliatory reason for

the adverse employment action.'" *Gilooly v. Mo. Dept of Health and Senior Services*, 421 F.3d

734, 739 (8th Cir. 2005).  "If the defendant can show a legitimate reason, the plaintiff must show

that the given reason was only a pretext for discrimination." *Id.*

     The Court finds that Plaintiff engaged in a protected activity when he filed his EEO

charges against the Defendant.  As the Defendant points out, a meritless EEO charge cannot

form the basis of a retaliation claim.  *Mattson v. Caterpillar, Inc.*,  359 F.3d 885 (7th Cir. 2004).

The Seventh Circuit explains however that the claim must be "not only unreasonable and

meritless, but also motivated by bad faith." *Id.* at 892.  There is no evidence in the instant case

that Plaintiff was motivated by bad faith when he filed his initial EEO charge against the

Defendant.  Therefore, assuming *Mattson* states the law in this circuit, it is inapplicable in this

case.

     As for the second prong of the analysis, Defendant contends that Plaintiff has failed to

show that he suffered any materially adverse action due to his EEO charges. "Because '[t]he

scope of the anti-retaliation provision extends beyond workplace-related or employment-related

retaliatory acts and harm,' a plaintiff need not show an adverse employment action related to the

terms and conditions of employment."  *Higgins v. Gonzales,*  481 F.3d 578, 589 -590 (8th Cir.

2007)(quoting *Burlington Northern*, 126 S.Ct. at 2414).  Instead, "the challenged action must be

materially adverse, which in the context of a retaliation claim means that it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

(citation and internal quotation marks omitted).  The *Burlington* standard is objective requiring

the Court to consider whether a reasonable employee in the Plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions. *Id.* at 2412-13.  The Supreme Court has explained the action against the plaintiff must still be "materially adverse" noting: "[w]e speak of material adversity because we believe it is important to separate significant from trivial harms," *Id.* at 2415, and "Title VII ... does not set forth 'a general civility code for the American workplace.' " *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). As such, certain behavior continues to be non-actionable under the retaliation provision such as "petty slights or minor annoyances that often take place at work and that all employees experience," "personality conflicts at work that generate antipathy," and "snubbing by supervisors and co-workers." *Burlington*, 126 S.Ct. at 2415.

Plaintiff claims that the Defendant changed his route, changed his starting time from 7:00 a.m. to 8:00 a.m., placed him on two days of administrative leave, subjected him to disciplinary action based on alleged safety violations, and was watched by Gilbert while he did his casing at the station.  Plaintiff has not proven that he suffered any loss of pay or benefits.  Plaintiff has failed to rebut the fact that he kept his route while three other letter carriers' routes were abolished in the route adjustment and that all of the routes at Park Hill were changed.  Plaintiff has offered no evidence to contradict the fact that he was involved in twelve accidents during his tenure at Park Hill which resulted in disciplinary action against him.  There is no evidence that the change in Plaintiff's hours from 7:00 a.m. to 8:00 a.m. resulted in a hardship to Plaintiff or significantly affected Plaintiff's employment in any way.  There is evidence that Gilbert watched Plaintiff perform his office duties in the mornings.  However, there is no evidence that Gilbert

8

limited his supervision to Plaintiff.  In fact, the evidence shows that Gilbert treated all of his employees harshly.  While the Court is not condoning such behavior, the fact that Gilbert treated all of his employees in a dictatorial way tends to undermine Plaintiff's contention that he was treated differently by Gilbert than his co-workers.  The Court finds that no jury could reasonably conclude that Defendant's actions constituted a materially adverse action.

Moreover, there is little evidence that the Defendant's treatment of Plaintiff was causally connected to Plaintiff's filing of EEO charges.  The evidence shows that the conflict between Plaintiff and Gilbert was on-going throughout their working relationship.  Ms. Osowski testified that the source of the conflict between Plaintiff and Gilbert was "too much testosterone. . . . Both of them were in a position of authority and each one wanted their own say."  (Ex. 2, Osowski Dep. At p. 60).  The evidence shows nothing more than "personality conflicts at work that generate antipathy" which is not actionable in federal court.  *Burlington*, 126 S.Ct. at 2415.

In conclusion, the Court finds that Plaintiff has failed to set forth a prima facie case of retaliation.  Plaintiff has not shown he was subjected to materially adverse action which was causally connected to his filing of EEO charges.  Accordingly, Defendant's Motion for Summary Judgment (Docket # 15) is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 12th day of June 2007.

_____
James M. Moody
United States District Judge